## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MANNOT LUSCA,

      Petitioner,

v.                        CASE NO. 8:19-cv-2815-TPB-AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER DENYING AMENDED PETITION FOR WRIT OF HABEAS CORPUS

Mannot Lusca petitions (Doc. 4) under 28 U.S.C. § 2254 for a writ of habeas corpus and challenges his state court convictions for sexual battery with a weapon, burglary of a dwelling with assault or battery, and robbery.  The Respondent asserts (Doc. 8) that the seven grounds in the petition are unexhausted, procedurally barred, and meritless.  After reviewing the amended petition, the response, the relevant state court record, and the reply (Doc. 14), the Court finds as follows:

### Factual and Procedural Background

An information charged Lusca with two counts of sexual battery with a deadly weapon, burglary of a dwelling with assault or battery, and robbery.  (Doc. 9-2 at 48–53)  At trial, the victim testified that she arrived home around midnight with her two-year-old son, who was asleep.  (Doc. 9-2 at 354–55)  The victim placed her son in bed and returned outside to her car to get some clothes.  (Doc. 9-2 at

1

356–57)  While carrying her clothes back to her home, the victim saw a male on the street walk towards her.  (Doc. 9-2 at 357–58)  As she approached her front door, the male offered help, but the victim declined.  (Doc. 9-2 at 358)  The victim went inside to put her clothes down, and the male continued to offer help.  (Doc. 9-2 at 358)  The victim tried to close her front door, but the male rushed in, pushed the victim down, told her to shut up, and threatened her with a gun.  (Doc. 9-2 at 360–61)

The male demanded money, and the victim gave him fifty dollars.  (Doc. 9-2 at 363–64)  The male snatched a chain from the victim's neck and a bracelet from her wrist.  (Doc. 9-2 at 363)  The male saw the victim's purse, told her to empty the contents onto a table, and took a ten-dollar bill.  (Doc. 9-2 at 363)  The male demanded that the victim perform oral sex on him.  (Doc. 9-2 at 365–67)  When the victim refused, the male threatened her son.  (Doc. 9-2 at 367–68)  To protect her son, the victim agreed and performed oral sex on the male.  (Doc. 9-2 at 368)  The male demanded that the victim take her pants off and engaged in vaginal sex with the victim.  (Doc. 9-2 at 370–72)  After five or ten minutes, the male stood up, told the victim not to call the police, and threatened that he knew where she lived.  (Doc. 9-2 at 372)

Seven years after the crimes, a detective showed the victim a photographic lineup of suspects, and the victim identified Lusca as the perpetrator without hesitation.  (Doc. 9-2 at 376–79, 456–59)  After waiving his constitutional rights, Lusca admitted to detectives that he walked up to the victim while she was carrying

2

some laundry.  (Doc. 9-2 at 501)  Lusca asked the victim if he could "chill" with her, and the victim said "nah."  (Doc. 9-2 at 502)  Lusca replied, "thank you for everything," and pulled out a toy gun.  (Doc. 9-2 at 502)  The victim told Lusca to leave, but Lusca refused and said that he was "gonna have to do something."  (Doc. 9-2 at 503)  The victim begged Lusca to put the gun down and performed oral sex on him.  (Doc. 9-2 at 503)  Lusca engaged in vaginal sex with the victim and used a condom because the victim asked.  (Doc. 9-2 at 504)  Lusca had recently given police a DNA sample and knew that police would discover the crimes.  (Doc. 9-2 at 507–08)  Lusca admitted that "it was wrong," that "[it was] something [he] wanted to get off his chest," and that he had "pray[ed] every day to God to forgive [him] for what [he] did."  (Doc. 9-2 at 508–09)

A crime scene investigator swabbed a stain on the floor in the victim's home. (Doc. 9-2 at 419–21, 423)  A crime laboratory analyst identified semen on the swab and extracted DNA from skin cells and sperm cells.  (Doc. 9-2 at 595–97)  From the skin cells, the analyst identified a mixture of DNA and opined that Lusca was a "possible contributor."  (Doc. 9-2 at 598–601, 606, 623)  From the sperm cells, the analyst identified a single source of DNA that matched Lusca's DNA.  (Doc. 9-2 at 601, 607)  The frequency of occurrence of the DNA profile from the sperm cells was one in fifty quadrillion African Americans.  (Doc. 9-2 at 612)

A jury found Lusca guilty of the crimes (Doc. 9-2 at 139–40), and the trial court sentenced Lusca to three consecutive life sentences for the two sexual battery convictions and the burglary conviction and a consecutive fifteen-year prison

3

sentence for the robbery conviction.  (Doc. 9-2 at 146–55)  Lusca appealed, and the state appellate court affirmed.  (Doc. 9-3 at 36)  Lusca filed a motion for post-conviction relief, the post-conviction court granted Lusca an evidentiary hearing, but Lusca withdrew his motion before the post-conviction court held the hearing and ruled on the motion.  (Doc. 9-6 at 124–25)  Lusca appealed the order dismissing his withdrawn motion, and the state appellate court dismissed the appeal after Lusca failed to file a brief.  (Doc. 9-7 at 2)  Lusca's federal petition follows.

## Legal Standards

### A.   AEDPA

Because Lusca filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, AEDPA governs the review of his claims.  *Lindh v. Murphy*, 521 U.S. 320, 336–37 (1997).  AEDPA modified 28 U.S.C. § 2254(d) and created a highly deferential standard for federal court review of a state court adjudication:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)   resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)   resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000), interprets this constraint on the power of the federal habeas court to grant a state prisoner's petition:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by [the U.S. Supreme Court] on a question of law or if the state court decides a case differently than [the U.S. Supreme Court] has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from [the U.S. Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case.

Clearly established federal law refers to "the holdings, as opposed to the dicta, of [the U.S. Supreme Court Court's] decisions as of the time of the relevant state-court decision." *Williams*, 529 U.S. at 412.

"The focus . . . is on whether the state court's application of clearly established law is objectively unreasonable . . . ." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011).

A factual determination by the state court is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). A federal habeas court may grant relief "only if, in light of the evidence presented in the state court proceedings, no reasonable jurist would agree with the factual determinations upon which the state court decision is based." *Raleigh v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 938,

948–49 (11th Cir. 2016).  Also, a state court's factual determination is presumed

correct, and a petitioner carries the burden of rebutting the presumption by clear

and convincing evidence.  28 U.S.C. § 2254(e)(1).

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner

applications in order to prevent federal habeas 'retrials' and to ensure that

state-court convictions are given effect to the extent possible under law."  *Bell*,

535 U.S. at 693.  Consequently, "review under [Section] 2254(d)(1) is limited to the

record that was before the state court that adjudicated the claim on the merits."

*Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

If the last state court to decide a federal claim explains its decision in a

reasoned opinion, a federal habeas court reviews the specific reasons in the opinion

and defers to those reasons if reasonable.  *Wilson v. Sellers*, 138 S. Ct. 1188, 1192

(2018).  If the last state court decision is without reasons, the federal court "should

'look through' the unexplained decision to the last related state-court decision that

does provide a relevant rationale [and] presume that the unexplained decision

adopted the same reasoning."  138 S. Ct. at 1192.

## B.    Ineffective Assistance of Counsel

Lusca asserts ineffective assistance of counsel — a difficult claim to sustain.

*Strickland v. Washington*, 466 U.S. 668, 687 (1984), explains:

> First, the defendant must show that counsel's performance was
> deficient. This requires showing that counsel made errors so
> serious that counsel was not functioning as the "counsel"
> guaranteed the defendant by the Sixth Amendment. Second,
> the defendant must show that the deficient performance
> prejudiced the defense. This requires showing that counsel's

> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance of counsel claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.  "[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  466 U.S. at 690.  "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct."  466 U.S. at 690.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691.  To meet this burden the defendant must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  466 U.S. at 694.  A reasonable probability is a "probability sufficient to undermine confidence in the outcome." 466 U.S. at 694.

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690.  A defendant cannot meet his burden by showing that the avenue chosen by counsel was unsuccessful.  *White v. Singletary*, 972 F.2d 1218, 1220–21 (11th Cir. 1992).  Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so."

*Richter*, 562 U.S. at 105.  "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

## C.     Exhaustion and Procedural Default

A petitioner must exhaust the remedies available in state court before a federal court can grant relief on federal habeas.  28 U.S.C. § 2254(b)(1)(A).  The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process.  *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard v. Connor*, 404 U.S. 270, 278 (1971).  The state court must have the first opportunity to review and correct any alleged violation of a federal right.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim.  *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982).  If the state court would deny the claim as procedurally barred under state law, the federal court instead denies the claim as procedurally barred on federal habeas.  *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).

A federal court also denies a claim as procedurally barred if the state court denied the claim on an independent and adequate state procedural ground. *Coleman*, 501 U.S. at 729–30. The last state court reviewing the federal claim must clearly and expressly state that the ruling rests on the state procedural bar. *Harris v. Reed*, 489 U.S. 255, 263 (1989). If the last state court rejected the federal claim in an unexplained decision, the federal habeas court looks through the unexplained decision to the last reasoned order to rule on the claim. *Ylst v. Nunnemaker*, 501 U.S. 797, 803 (1991). If the last reasoned order imposed the state procedural bar, the federal court presumes that the later unexplained decision did not silently disregard the bar and consider the merits. 501 U.S. at 803.

A petitioner may excuse a procedural bar on federal habeas either by showing cause and actual prejudice from the alleged violation of federal law or by showing a miscarriage of justice based on actual innocence. *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

## <u>Analysis</u>

## <u>Ground One</u>

Lusca asserts that trial counsel was ineffective for not retaining an expert who would testify that police had tampered with the audio recording of the detective's interrogation of Lusca. (Doc. 4 at 12) At the suppression hearing, the detective testified that he did not record the warnings required by *Miranda v. Arizona*, 384 U.S. 436 (1966) because in his experience a suspect becomes reluctant to speak if a detective initially shows him a tape recorder. (Doc. 4 at 13) Lusca

contends that, before the interrogation, he asked the detective for an attorney, and the detective responded by yelling, "Motherf*cker, this is about a thirteen-year-old girl." (Doc. 4 at 13)  Lusca contends that an expert would have testified that police tampered with the audio recording. (Doc. 4 at 14)  He asserts that trial counsel should have moved to exclude the interrogation based on tampering and should have presented the expert's testimony at trial to impeach the detective. (Doc. 4 at 14)

The Respondent asserts that the claim is unexhausted and procedurally barred because Lusca withdrew his motion for post-conviction relief. (Doc. 8 at 7–8)  The post-conviction court granted Lusca an evidentiary hearing and appointed counsel (Doc. 9-6 at 2–9), and Lusca, with the assistance of post-conviction counsel, withdrew his motion before the hearing. (Doc. 9-6 at 138–40)  If Lusca returned to state court to exhaust the claim, the post-conviction court would dismiss the claim as time-barred.  Fla. R. Crim. P. 3.850(b).  Lusca asserts that cause and prejudice under *Martinez v. Ryan*, 566 U.S. 1 (2012) excuse the procedural bar. (Doc. 4 at 12)  In *Martinez*, the U.S. Supreme Court held that a petitioner may establish cause by demonstrating that post-conviction counsel deficiently performed by not raising the defaulted claim and may establish prejudice by demonstrating that the defaulted claim has "some merit." *Id*. at 14.

Because Lusca fails to come forward with an affidavit or testimony to demonstrate that an expert would testify in the manner that he contends, his claim is speculative. *McKiver v. Sec'y, Fla. Dep't Corrs.*, 991 F.3d 1357, 1365 (11th Cir.

2021) ("We have explained that this burden is particularly 'heavy where the petitioner alleges ineffective assistance in failing to call a witness because often allegations of what a witness would have testified to are largely speculative.' And, for that reason, we have held that a petitioner's own assertions about whether and how a witness would have testified are usually not enough to establish prejudice from the failure to interview or call that witness.") (quoting *Sullivan v. DeLoach*, 459 F.3d 1097, 1109 (11th Cir. 2006)).

Also, even if trial counsel successfully moved to suppress Lusca's confession and successfully impeached the detective, Lusca cannot demonstrate a reasonable probability that the outcome at trial would change. *Strickland*, 466 U.S. at 694. Compelling, unrebutted DNA evidence from semen on the floor of the victim's home corroborated the victim's unwavering eyewitness identification of Lusca as the rapist. Consequently, Lusca fails to demonstrate prejudice to excuse the procedural bar. Even if Lusca demonstrates cause and prejudice, for the reasons above, the claim is meritless. Ground One is denied.

## Ground Two

Lusca asserts that trial counsel was ineffective for not cross-examining the victim about whether the perpetrator's penis was circumcised. (Doc. 4 at 16–18) He contends that the victim stated that the perpetrator's penis was circumcised and contends that an expert would have examined him and testified that he is not circumcised. (Doc. 4 at 16–18)

The Respondent asserts that the claim is unexhausted and procedurally barred because Lusca withdrew his motion for post-conviction relief.  (Doc. 8 at 7–8)  If Lusca returned to state court to exhaust the claim, the post-conviction court would dismiss the claim as time-barred.  Fla. R. Crim. P. 3.850(b).  Lusca asserts that cause and prejudice under *Martinez* excuse the procedural bar.  (Doc. 4 at 16)

Because Lusca fails to come forward with an affidavit or testimony to demonstrate that an expert would testify in the manner that he contends and further fails to substantiate that the victim stated that the perpetrator's penis was circumcised, his claim is speculative.  *McKiver*, 991 F.3d at 1365.  Also, even if trial counsel had successfully impeached the victim about her alleged observation that the perpetrator had a circumcised penis, Lusca cannot demonstrate a reasonable probability that the outcome at trial would change.  *Strickland*, 466 U.S. at 694.  Compelling, unrebutted DNA evidence from semen on the floor in the victim's home and Lusca's detailed, remorseful confession corroborated the victim's unwavering eyewitness identification of Lusca as the rapist.  Consequently, Lusca fails to demonstrate prejudice to excuse the procedural bar.  Even if Lusca demonstrates cause and prejudice, for the reasons above, the claim is meritless.  Ground Two is denied.

**Ground Three**

Lusca asserts that trial counsel was ineffective for not providing him with the victim's deposition before trial.  (Doc. 4 at 19–21)  He contends that he first learned about the victim's deposition on direct appeal and discovered statements in the

deposition that trial counsel should have used to impeach the victim at trial.  (Doc. 4 at 19)  He contends that during the deposition the victim described the gun as "black and square" and during trial the victim described a red part on the gun for the first time.  (Doc. 4 at 19–20)  He contends that he told the detective during the interrogation that he used a toy gun during the crime and would have testified at trial about the toy gun to further impeach the victim.  (Doc. 4 at 20)

The Respondent asserts that the claim is unexhausted and procedurally barred because Lusca withdrew his motion for post-conviction relief.  (Doc. 8 at 7–8)  If Lusca returned to state court to exhaust the claim, the post-conviction court would dismiss the claim as time-barred.  Fla. R. Crim. P. 3.850(b).  Lusca asserts that cause and prejudice under *Martinez* excuse the procedural bar.  (Doc. 4 at 19)

At trial, on direct examination, the victim testified that the gun was black. (Doc. 9-2 at 361)  On cross-examination, trial counsel asked the victim whether the gun looked like a toy gun (Doc. 9-2 at 401):

| [Trial counsel:] | Okay. The gun which you said the perpetrator used, did it look like a real gun to you? |
|---|---|
| [Victim:] | I wouldn't know. |
| [Trial counsel:] | Did it have a red part on it? |
| [Victim:] | That I seen, yes. |
| [Trial counsel:] | Yes? |
| [Victim:] | Yes. |
| [Trial counsel:] | Where was the red part? |
| [Victim:] | It was on the end of the gun. |

| | |
|---|---|
| [Trial counsel:] | Like where the bullet would come out? |
| [Victim:] | In the back. |
| [Trial counsel:] | In the back. So it could have been a plastic gun, a toy gun? |
| [Victim:] | I wouldn't know. |

During his audio-recorded confession played for the jury, Lusca described the gun as a toy gun.  (Doc. 9-2 at 502–03)  Lusca's statement to the detective was admitted for the truth of the matter asserted.  § 90.803(18)(a), Fla. Stat.  On cross-examination, trial counsel asked the detective who interrogated Lusca whether he "[had] any reason [ ] to disprove that [the gun] was a toy gun," and the detective replied, "No."  (Doc. 9-2 at 521)  During closing, trial counsel relied on this evidence to argue that the prosecutor did not prove that Lusca was armed with a real gun during the crimes.  (Doc. 9-2 at 679–80)

Because the victim's description of the gun during the deposition as "black and square" tended to prove that the gun was a real gun, the prior statement did not exculpate Lusca, and trial counsel was not ineffective for failing to impeach the victim with the inculpatory statement.  *Johnson v. Alabama*, 256 F.3d 1156, 1186 (11th Cir. 2001) ("[W]hen an attorney 'substantially impeache[s]' the witness, no claim for ineffectiveness can succeed unless the petitioner comes forward with 'specific information' which 'would have added to the impeachment of the State's witnesses.'  Without that kind of information, a petitioner cannot meet his burden of proving a *Strickland* violation.").

Also, the jury rejected trial counsel's argument that the gun was a toy gun, even though the victim identified a red part on the gun and Lusca described the gun as a toy gun.  Lusca cannot demonstrate a reasonable probability that the outcome at trial would change if he testified, subjected himself to impeachment, and merely repeated his description of the gun as a toy gun to the jury.  *Parker v. Allen*, 565 F.3d 1258, 1279 (11th Cir. 2009) ("Additional, but cumulative, evidence which could have been presented does not, however, establish ineffective assistance."). Consequently, Lusca fails to demonstrate prejudice to excuse the procedural bar. Even if Lusca demonstrates cause and prejudice, for the reasons above, the claim is meritless.  Ground Three is denied.

## **Ground Four**

Lusca asserts that the trial court violated his federal right to due process because the prosecutor failed to prove that he used or threatened to a use a gun during the crimes.  (Doc. 4 at 22–25)  The Respondent asserts that the claim is unexhausted and procedurally barred.  (Doc. 8 at 20–21)  On direct appeal, appellate counsel filed a brief pursuant to *Anders v. California*, 386 U.S. 738 (1967) and stated that "appellate counsel can find no meritorious argument to support the contention that the trial court committed significant reversible error in this case." (Doc. 9-3 at 13)  Lusca did not file a *pro se* brief raising the claim.  If Lusca returned to state court to exhaust the claim, the post-conviction court would deny the claim of trial error as procedurally defaulted.  Fla. R. Crim. P. 3.850(c).

Lusca admits that the claim was not exhausted on direct appeal.  (Doc. 4 at 23)  He contends that he was not "intellectually capable" of filing a brief at that time, and appellate counsel deficiently performed by failing to raise the claim on direct appeal.  (Docs. 4 at 23 and 14 at 10–12)  Ignorance and illiteracy do not establish cause to excuse a procedural bar.  *Smith v. Newsome*, 876 F.2d 1461, 1466 (11th Cir. 1989).  Ineffective assistance of counsel may establish cause, but a petitioner must separately exhaust the ineffective assistance of counsel claim. *Henderson v. Campbell*, 353 F.3d 880, 896 (11th Cir. 2003) (citing *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000)).  Because Lusca failed to exhaust the claim in a petition alleging ineffective assistance of appellate counsel, appellate counsel's ineffective assistance does not establish cause.

Also, the victim testified that she observed Lusca armed with a black gun (Doc. 9-2 at 361), that she begged Lusca to point the gun away from her face while he raped her (Doc. 9-2 at 370, 379), that she believed that the gun could hurt and kill her and her son (Doc. 9-2 at 366, 370–71), and that she believed that the gun was a real gun.  (Doc. 9-2 at 405)  Viewing this evidence in the light most favorable to the prosecution, a rational juror could find beyond a reasonable doubt that Lusca used a real gun while committing the crimes.  *Jackson v. Virginia*, 443 U.S. 307, 324 (1979).  Consequently, even if Lusca demonstrates cause and prejudice, the federal due process claim is meritless.  Ground Four is denied.

## Ground Five

Lusca asserts that trial counsel was ineffective for not retaining a handwriting expert.  (Doc. 4 at 26–27)  He contends that a handwriting expert would have testified that the detectives forged his signature on the waiver of rights form presented to him before the interrogation.  (Doc. 4 at 26)

The Respondent asserts that the claim is unexhausted and procedurally barred.  (Doc. 8 at 21–22)  Lusca failed to raise the claim in his motion for post-conviction relief and withdrew the motion that he filed.  (Doc. 9-6 at 138–40)  If Lusca returned to state court to exhaust the claim, the post-conviction court would dismiss the claim as time-barred.  Fla. R. Crim. P. 3.850(b).  Lusca contends that testing shows that he functions at the education level of a third grader and asserts that his lack of education and understanding of the court system establishes cause to excuse the procedural bar.  (Doc. 14 at 10–12)  He further asserts that cause and prejudice under *Martinez* excuse the procedural bar.  (Doc. 4 at 26)

Ignorance and illiteracy do not establish cause to excuse a procedural bar. *Smith*, 876 F.2d at 1466.  Because Lusca fails to come forward with an affidavit or testimony to demonstrate that an expert would testify in the manner that he contends, his claim is speculative.  *McKiver*, 991 F.3d at 1365.  Also, even if trial counsel successfully moved to exclude his confession, Lusca cannot demonstrate a reasonable probability that the outcome at trial would change.  *Strickland*, 466 U.S. at 694.  Compelling, unrebutted DNA evidence from semen on the floor of the victim's home corroborated the victim's unwavering eyewitness identification of

Lusca as the rapist.  Consequently, Lusca fails to demonstrate prejudice to excuse the procedural bar.  Even if Lusca demonstrates cause and prejudice, for the reasons above, the claim is meritless.  Ground Five is denied.

**Ground Six**

Lusca asserts that trial counsel was ineffective for not moving to exclude opinions by the detectives about Lusca's guilt during the recorded interrogation played for the jury.  (Doc. 4 at 28–29)  He contends that one detective commented, "We already know it was you," and the second detective commented, "I already know you did it.  That's why I'm here, okay?  You don't have to confess and say, yes. I already know you did it."  (Doc. 4 at 28)

The Respondent asserts that the claim is unexhausted and procedurally barred.  (Doc. 8 at 21–22)  Lusca failed to raise the claim in his motion for post-conviction relief and withdrew the motion that he filed.  (Doc. 9-6 at 138–40)  If Lusca returned to state court to exhaust the claim, the post-conviction court would dismiss the claim as time-barred.  Fla. R. Crim. P. 3.850(b).  Lusca contends that testing shows that he functions at the education level of a third grader and asserts that his lack of education and understanding of the court system establishes cause to excuse the procedural bar.  (Doc. 14 at 10–12)  He further asserts that cause and prejudice under *Martinez* excuse the procedural bar.  (Doc. 4 at 26)

Ignorance and illiteracy do not establish cause to excuse a procedural bar. *Smith*, 876 F.2d at 1466.  The jury heard the recorded interrogation, which contains the inadmissible opinions by the detectives about Lusca's guilt.  (Doc. 9-2 at 498–99)

18

*See Jackson v. State*, 107 So. 3d 328 (Fla. 2012).  However, even if trial counsel successfully moved to exclude the detectives' opinions on guilt, Lusca cannot demonstrate a reasonable probability that the outcome at trial would change. *Strickland*, 466 U.S. at 694.  Compelling, unrebutted DNA evidence from semen on the floor of the victim's home and Lusca's detailed, remorseful confession corroborated the victim's unwavering eyewitness identification of Lusca as the rapist.  Consequently, Lusca fails to demonstrate prejudice to excuse the procedural bar.  Even if Lusca establishes cause and prejudice, for the reasons above, the claim is meritless.  Ground Six is denied.

### Ground Seven

Lusca asserts that trial counsel was ineffective for not objecting to his two convictions for sexual battery with a deadly weapon and his two convictions for burglary with assault or battery and robbery.  (Doc. 4 at 30)  He contends that both sets of convictions violate double jeopardy because the crimes occurred during the same criminal episode and against the same victim.  (Doc. 4 at 30)

The Respondent asserts that the claims are unexhausted and procedurally barred.  (Doc. 8 at 21–22)  Lusca failed to raise the claims in his motion for post-conviction relief and withdrew the motion that he filed.  (Doc. 9-6 at 138–40)  If Lusca returned to state court to exhaust the claims, the post-conviction court would dismiss the claims as time-barred.  Fla. R. Crim. P. 3.850(b).  Lusca contends that testing shows that he functions at the education level of a third grader and asserts that his lack of education and understanding of the court system establishes cause

to excuse the procedural bar.  (Doc. 14 at 10–12)  He further asserts that cause and prejudice under *Martinez* excuse the procedural bar.  (Doc. 4 at 30)

Ignorance and illiteracy do not establish cause to excuse a procedural bar. *Smith*, 876 F.2d at 1466.  Because the claims are meritless, Lusca fails to demonstrate prejudice under *Martinez* to excuse the procedural bar.

**Sexual Battery with a Deadly Weapon**

The information charged Lusca with two counts of sexual battery with a deadly weapon.  (Doc. 9-2 at 49)  Count One charged Lusca with "sexual battery . . . by penetration of or union with the mouth of [the victim] and the penis of [Lusca]." (Doc. 9-2 at 49)  Count Two charged Lusca with "sexual battery . . . by penetration of or union with the vagina of [the victim] by the penis of [Lusca]."  (Doc. 9-2 at 49) The jury found Lusca guilty of both counts and found specifically that Lusca "did penetrate the victim's mouth" and that Lusca "did penetrate the victim's vagina." (Doc. 9-2 at 139–40)  Because sexual battery by oral penetration and sexual battery by vaginal penetration are two acts that the Florida legislature intended to separately punish, the convictions for the two crimes do not violate double jeopardy, even if the crimes occurred during the same criminal episode against the same victim.  *State v. Meshell*, 2 So. 3d 132, 135 (Fla. 2009) ("We agree that sexual acts of a separate character and type requiring different elements of proof, such as those proscribed in the sexual battery statute, are distinct criminal acts that the Florida Legislature has decided warrant multiple punishments.").  *Missouri v. Hunter*, 459 U.S. 359, 368–69 (1983) ("Where, as here, a legislature specifically authorizes

cumulative punishment under two statutes, regardless of whether those two statutes proscribe the 'same' conduct under *Blockburger*, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.").

### Burglary with Assault or Battery and Robbery

The information charged Lusca with burglary of a dwelling with an assault or a battery and robbery. (Doc. 9-2 at 49–50)[1] The jury found Lusca guilty of both crimes. (Doc. 9-2 at 140) The convictions for the two offenses do not violate double jeopardy because each offense requires proof of an element that the other offense does not. *McAllister v. State*, 718 So. 2d 917, 918 (Fla. 5th DCA 1998) ("Under the traditional *Blockburger* analysis, burglary with a battery or assault and robbery are separate offenses because each offense contains one or more essential elements that the other does not.") (footnote omitted). *Blockburger v. United States*, 284 U.S. 299, 304 (1932) ("The applicable rule is that, where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.").

Because neither set of convictions violates double jeopardy, Lusca fails to demonstrate prejudice to excuse the procedural bar. Even if Lusca demonstrates

---

[1] The information did not charge Lusca with home invasion robbery. *Perez v. State*, 951 So. 2d 859, 859 (Fla. 2d DCA 2006) ("It has been held that convictions arising from a single episode for home invasion robbery and burglary violate either double jeopardy or section 775.021(4)(b)(3).").

cause and prejudice, for the reasons above, the double jeopardy claims are meritless.  Ground Seven is denied.

**Conclusion**

Because Lusca fails to meet his heavy burden under AEDPA, his amended petition for a writ of habeas corpus (Doc. 4) is **DENIED**.  The Clerk must enter a judgment against Lusca and **CLOSE** the case.

**Denial of Certificate of Appealability and
Leave to Appeal _In Forma Pauperis_**

Because Lusca fails to show that reasonable jurists would debate either the merits of the underlying claims or the procedural issues that he seeks to raise, a certificate of appealability and leave to appeal _in forma pauperis_ are **DENIED**. 28 U.S.C. § 2253(c)(2).  _Slack v. McDaniel_, 529 U.S. 473, 478 (2000).

**DONE** and **ORDERED** in Chambers, in Tampa, Florida, this 6th day of February, 2023.

_____

**TOM BARBER
UNITED STATES DISTRICT JUDGE**